**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re: REBECCA ORR

REBECCA ORR,

*Petitioner*.

v.

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE,

*Respondent*.

UNITED PARCEL SERVICE, INC. (DELAWARE),

*Real Party in Interest*.

No. 25-2330

D.C. No. 5:24-cv-00421-SSS-SP

OPINION

Petition for a Writ of Mandamus

Argued and Submitted November 21, 2025
Pasadena, California

Filed June 9, 2026

Before: Marsha S. Berzon, N. Randy Smith, and Eric D. Miller, Circuit Judges.

Opinion by Judge Berzon;
Concurrence by Judge Miller

## SUMMARY*


### Writ of Mandamus

The panel granted a petition for a writ of mandamus requiring the district court to vacate its order compelling arbitration of Rebecca Orr's individual claims against her former employer, the United Parcel Service, Inc. ("UPS").

Orr brought several claims against UPS on behalf of three putative classes as well as individual claims. The district court ordered Orr to arbitrate her individual claims consistent with the terms of the binding arbitration agreement, but stayed the litigation of the class claims pending resolution of arbitration. In ruling on UPS's motion to compel arbitration, the district court refused to determine whether the Federal Arbitration Act ("FAA") or the California Arbitration Act was applicable to Orr's agreement.

The panel weighed the factors in *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977), in determining whether to grant a writ of mandamus.


* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Regarding the third *Bauman* factor—whether the district court committed a clear error of law—the panel held that the district court committed clear error by refusing to determine the basis for its authority to compel arbitration and improperly delegating the contractual question as to the FAA's applicability to the arbitrator. *New Prime Inc. v. Oliveira* held that the district court, not an arbitrator, must decide whether the contracts of employment exclusion in 9 U.S.C. § 1 applies to an agreement before ordering arbitration. 586 U.S. 105, 111 (2019). By compelling arbitration of Orr's individual claims without deciding whether the FAA or state law applies, the district court improperly delegated the FAA § 1 exclusion question to the arbitrator.

Regarding the first *Bauman* factor—whether the party seeking the writ lacks an adequate alternative remedy—the panel held that Orr met this factor because no contemporaneous, ordinary appeal of the district court's order is available.

Regarding the second *Bauman* factor—whether the party seeking the writ will be prejudiced in a way not correctable on appeal—the panel held that Orr met this factor for two cumulative reasons: (1) uncorrectable prejudice stemmed from the district court's refusal to specify the source of its authority for its order compelling arbitration; and (2) because the outcome in arbitration could depend on whether the FAA or state arbitration law applied, Orr faced prejudice uncorrectable on appeal if she proceeded to arbitration without the district court's determination on that issue.

Because Orr made a sufficient showing as to the first three *Bauman* factors, including the critical factor of clear

legal error, the panel granted the petition for a writ of mandamus and directed the district court to determine the appropriate statutory basis for its authority to compel arbitration.

Concurring, Judge Miller joined the court's opinion in full because it correctly applied this Court's precedents permitting the use of writs of mandamus to review orders compelling arbitration. He wrote separately to express his view that those cases improperly disregarded Congress's specific limitations on interlocutory review of orders involving arbitration.

---

**COUNSEL**

Vladmir J. Kozina (argued), Robert J. Wassermann, and Jenny D. Baysinger, Mayall Hurley PC, Lodi, California, for Petitioner.

Elizabeth A. Falcone (argued), Ogletree Deakins Nash Smoak & Stewart PC, Portland, Oregon; Robert Vorhees, Ogletree Deakins Nash Smoak & Stewart PC, Costa Mesa, California; for Real Party in Interest.

## OPINION

BERZON, Circuit Judge:

This petition for a writ of mandamus arises out of an action Rebecca Orr brought against her former employer, United Parcel Service, Inc. ("UPS"). UPS sought to compel arbitration of Orr's claims in accordance with an employment agreement she signed when applying for her position with UPS. Orr and UPS disagreed as to whether the Federal Arbitration Act ("FAA") or the California Arbitration Act ("CAA") governs the agreement, and so whether federal or state arbitration law controls adjudication of the dispute. The difference potentially matters; the two statutes vary in ways that could affect the outcome in this case.

In ruling on UPS's motion to compel arbitration, the district court refused to determine whether the FAA or CAA is applicable to Orr's agreement. The district court instead reasoned that Orr's claims must proceed to arbitration regardless of the applicable statute, so the court did not need to determine which applies. Orr now petitions this court for a writ of mandamus, contending that, by declining to address the applicability of the FAA in the first instance, the district court's order runs afoul of settled law.

Orr's petition presents a variation on a theme familiar in arbitration law. *New Prime Inc. v. Oliveira* held that the district court, not an arbitrator, must decide whether the contracts of employment exclusion in 9 U.S.C. § 1 applies to an agreement before ordering arbitration. 586 U.S. 105, 111 (2019). Orr maintains that *New Prime* applies here and required the district court to determine whether her UPS job comes within the FAA's contracts of employment exclusion.

UPS's position is the opposite—that *New Prime* is not relevant to this case. UPS argues that, because state law would provide an alternative basis for compelling arbitration if the FAA did not apply to Orr's agreement, the district court was not obligated to determine the FAA's applicability before compelling arbitration.

We agree with Orr. *New Prime* makes clear that, even where parties have agreed to "require arbitration of every question under the sun," *id.* at 111, a court's authority to compel arbitration is not "unconditional," *id.* at 110. For that reason, *New Prime* instructs courts to determine the basis of their authority to compel claims to arbitration. *See id.* at 111. The district court did not do so here. Although there may be some instances in which it is permissible for courts to send claims to arbitration without specifying their authority to do so, *see infra* note 7, this case—in which the arbitrability of Orr's claims could turn on whether federal or state law governs—is not one of them. Moreover, Orr's employment agreement with UPS selects the FAA as controlling law unless the FAA "does not apply to a particular dispute or to one or both parties." To enforce the Agreement by its terms, the district court had to decide whether the FAA or state law supplied its authority to compel arbitration. Because the district court did not decide the contractual question—whether the FAA is applicable—the arbitrator will need to, which *New Prime* forbids.

For these reasons, the district court erred by compelling arbitration of Orr's individual claims without specifying the source of its authority to do so. The district court's mistake was clear legal error. As two other factors governing the grant of a writ of mandamus also weigh in favor of issuing the writ and one is neutral, *see Bauman v. U.S. Dist. Court*,

557 F.2d 650, 654–55 (9th Cir. 1977), we grant Orr's petition for a writ of mandamus.

## I. Background

UPS hires Seasonal Support Drivers on a temporary basis to support deliveries in areas with "increased holiday volume." Rebecca Orr worked as a Seasonal Support Driver for UPS in late 2023. As a Seasonal Support Driver, Orr picked up packages from other UPS drivers and delivered them to their final destinations.

When she first applied for the position, Orr signed an "Arbitration Agreement/Seasonal Hiring Agreement" ("Agreement") through an online UPS application portal. The Agreement states that it "is intended to be as broad as legally permissible" and applies to all claims or controversies, "including, without limitation, disputes arising out of or related to [Orr's] application and selection for employment, employment or relationship with [UPS], and/or the termination of employment with [UPS]."

The Agreement includes four provisions relevant to Orr's petition. First, Orr and UPS agreed in a "Delegation Clause" that "the Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability, or waiver" of the Agreement. Second, Orr agreed in a "Class Action Waiver" "to bring any claim on an individual basis and not on a class and/or collective action basis," including in arbitration. The Class Action Waiver is severable if determined by a court to be invalid, unenforceable, unconscionable, or void, and any class action may thereafter be litigated "in a civil court of competent jurisdiction." Third, Orr agreed in a "PAGA [Private Attorneys General Act] Individual Action

Requirement Clause" to arbitrate any PAGA claims "on an individual basis only." The PAGA Individual Action Requirement Clause provides that "any non-individual PAGA claims shall be stayed in the trial court, pending a final determination and written decision by the Arbitrator in arbitration with respect to [Orr's] alleged status as an 'aggrieved employee,'" and "the Arbitrator, and not the court, will make this determination." And fourth, a section entitled "How This Agreement Applies" describes the Agreement as "a contract governed by the Federal Arbitration Act." The Agreement provides the FAA will govern all disputes between Orr and UPS unless the FAA "does not apply to a particular dispute or to one or both parties."

Orr began making deliveries as a Seasonal Support Driver. She soon experienced frequent, unannounced changes to her schedule. Although UPS initially advised Orr that she would work eight hours per day, six days per week, her delivery routes were shortened or canceled on the morning of a scheduled shift on at least seven occasions. In mid-December, in response to a route cancellation, Orr contacted the UPS human resources department to inquire why she had not received a delivery route for the day. A human resources representative told Orr that her route had been cut because there were not enough packages out for delivery. Orr did not receive any additional assignments for the remainder of her employment period, despite making repeated inquiries for available work.

Orr filed a complaint in the Superior Court of California for the County of Riverside, alleging five state law claims against UPS. Notably, Orr brought several claims on behalf of three putative classes, including allegations that UPS failed to pay Seasonal Support Drivers their required

"reporting time pay."[1] In her First Amended Complaint, Orr added a sixth claim, under the California Private Attorneys General Act ("PAGA"). UPS removed the case to the United States District Court for the Central District of California, and then filed a motion to compel arbitration of Orr's claims and to stay proceedings in the district court.

The district court granted UPS's motion. It ordered Orr to arbitrate her individual claims "consistent with the terms of the binding arbitration agreement," but stayed "the litigation of the class claims pending resolution of arbitration." The district court held that it "need not decide" whether the FAA or CAA governed the Agreement because the "result is the same" under either statute. Orr did not argue that the Agreement's Delegation Clause "is revocable under California contract defenses," so the district court concluded that she "forfeited her opportunity to challenge [that] issue and must arbitrate her individual claims."

In response, Orr filed a motion for clarification pursuant to Federal Rule of Civil Procedure 60(a) and (b) requesting that the district court clarify the intended scope of its order compelling arbitration. Orr maintained in her motion that the order compelling arbitration was flawed, contending both that the district court must decide for itself whether the Agreement falls within an exemption to the FAA as described in 9 U.S.C. § 1 and that, under the Agreement's

---

[1] Orr's reference to "reporting time pay" is drawn from the California Code of Regulations. The Regulations require that, for "[e]ach workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage." Cal. Code of Reg. tit. 8, § 11090(5)(A).

Delegation Clause, the district court "was without authority to determine whether [Orr's] substantive claims are arbitrable."

The district court denied Orr's motion for clarification. It held:

> In its prior order, the Court did not decide any issues as to the arbitrability of the agreement and specifically noted the delegation of such issues to the arbitrator. Furthermore, the Court properly refrained from determining whether a Section 1 exemption applies, and whether the CAA or FAA applies, because the CAA does not require analysis of whether an exemption applies prior to compelling arbitration.

Orr petitions this court for a writ of mandamus, contending that direct appeal of the district court's order compelling arbitration is unavailable to her under both the FAA and CAA. *See* 9 U.S.C. § 16(b)(1)–(2) (authorizing only discretionary appeal under 28 U.S.C. § 1292(b) of an interlocutory order granting a stay or directing arbitration under the FAA); Cal. Civ. Proc. Code § 1294 (permitting appeals from orders denying, but not granting, a petition to compel arbitration).

## II. Writ of Mandamus

Orr requests that this court issue a writ of mandamus requiring the district court to vacate its order denying her motion for clarification and to correct two errors she contends the district court made when it compelled arbitration of her claims against UPS. First, she requests that

the district court make an initial determination as to whether her Agreement with UPS is exempt from the FAA under 9 U.S.C. § 1. Second, she seeks vacatur of the portion of the district court's order compelling arbitration that requires her to arbitrate her individual claims, as she maintains that an arbitrator must rule on threshold issues of the Agreement's arbitrability before she can be compelled to submit her individual claims to arbitration.

To determine whether to grant a writ of mandamus, we weigh five factors:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioners will be damaged or prejudiced in a way not correctable on appeal. (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

*Bauman*, 557 F.2d at 654–55 (citation modified). A court is not "compelled to grant the writ when all five [*Bauman*] factors are present, nor prohibited from doing so when fewer than five, or only one, are present." *In re Sussex*, 781 F.3d 1065, 1071 (9th Cir. 2015). The third *Bauman* factor, which asks whether the district court committed a clear error of law, "is a necessary condition for granting a writ of mandamus." *In re Van Dusen*, 654 F.3d 838, 841 (9th Cir. 2011). But "[w]e will not grant mandamus relief simply

because a district court commits an error, even one that would ultimately require reversal on appeal." *Id.* at 845 (quoting *Wilson v. U.S. Dist. Ct. for E. Dist. of Cal.*, 103 F.3d 828, 830 (9th Cir. 1996)).

We address each *Bauman* factor in turn. Because the third factor is necessary, albeit insufficient, for Orr to obtain mandamus relief, we begin our analysis there.

**A. Clear Error**

The district court committed clear error by refusing to determine the basis for its authority to compel arbitration and improperly delegating the contractual question as to the FAA's applicability to the arbitrator.

1.

"Congress adopted the [FAA] in 1925 in response to a perception that courts were unduly hostile to arbitration." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018). The FAA "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citations omitted). Federal courts implement the FAA's mandate to enforce private arbitration agreements via 9 U.S.C. §§ 3 and 4, which, respectively, permit a party to apply for a stay in court proceedings pending arbitration and to compel arbitration.

To stay proceedings or compel arbitration under the FAA, however, a district court must first determine whether an agreement falls "within or beyond the boundaries of §§ 1 and 2." *New Prime*, 586 U.S. at 111. Section 1 of the FAA excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" from the FAA's coverage. 9 U.S.C.

§ 1. Section 2 provides that a written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA's sequencing is not incidental. Ordinarily, if the issue is raised, a district court must "decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration" under the FAA. *New Prime*, 586 U.S. at 111. That is because "the enforceability of arbitration provisions under §§ 3 and 4 depends on whether those provisions are part of" a "contract evidencing a transaction involving commerce under § 2—which, in turn, depends on the application of § 1's exception for certain contracts of employment." *Id.* (citation modified). So *New Prime* makes clear that a court's power to compel arbitration and stay proceedings under the FAA is rooted in the statute's bounded grant of authority. *Id.* at 110.

Here, the district court refused to determine whether the FAA *or* the CAA governs arbitration. The district court compelled arbitration without stating the basis for its authority to do so—thereby sidestepping whether the FAA's contracts of employment exclusion applies. Its order compelling arbitration was clearly erroneous.

This is particularly so in this case for two reasons. For one thing, the Agreement's terms made it necessary for the district court to decide whether the FAA applied. Arbitration is a matter of contract, and "the first question in any arbitration dispute must be: What have these parties agreed to?" *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024). The choice-of-law provision in the Agreement provides that the

FAA will govern the Agreement unless the FAA "does not apply to a particular dispute or to one or both parties." That provision indicates the parties' expectation that the FAA will control absent a ruling to the contrary, and so suggests that, as a contractual matter, the issue of the FAA's applicability should be decided before ordering arbitration.[2] Although the Agreement does not dictate *who* will decide whether the FAA applies, *New Prime* does: The "district court, not an arbitrator, must determine whether § 1's exemption applies in a given case." *Romero v. Watkins & Shepard Trucking, Inc.*, 9 F.4th 1097, 1100 (9th Cir. 2021) (citing *New Prime*, 586 U.S. at 111). By compelling arbitration of Orr's individual claims without deciding whether the FAA or state law applies, the district court improperly delegated the FAA § 1 exclusion question to the arbitrator.

Second, whether the FAA or state law applies is not here simply a technical question. State law and the FAA are not identical. They differ in ways that may be relevant to this case. As a result, without any district court determination of the governing law, the arbitrator, when evaluating the threshold issues of the Agreement's enforceability and arbitrability, will need to decide in the first instance whether the FAA governs. That is because certain issues pertaining to the Agreement's arbitrability (which the Agreement's Delegation Clause requires the arbitrator to decide) turn on

[2] The parties and the district court assumed that the CAA applies if the FAA does not; this opinion therefore so assumes as well. But at oral argument, the parties acknowledged that the Agreement states the Ohio Arbitration Act ("OAA"), not the CAA, will apply if the FAA does not. Given the scope of relief requested by Orr in her mandamus petition, we do not address which law should apply if the FAA is determined not to apply to Orr's agreement, be that law Ohio's, or California's, or neither.

whether the FAA applies and, accordingly, whether state law is preempted.

For example, section 229 of the California Labor Code provides that actions "for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." Cal. Lab. Code § 229. Where applicable, the FAA preempts section 229, as the federal policy embodied in the FAA to "provide for the enforcement of arbitration agreements" is "in unmistakable conflict" with section 229's requirement that "litigants be provided a judicial forum for resolving wage disputes." *Perry v. Thomas*, 482 U.S. 483, 490–91 (1987). That result changes, however, where the FAA is inapplicable. California courts have held that, where only the CAA applies, "an action under Labor Code section 229 may be maintained in court." *Garrido v. Air Liquide Indus. U.S. LP*, 241 Cal. App. 4th 833, 845 (2015).

So several of Orr's claims—those for "due and unpaid wages"—might be litigable in court if the Agreement falls within a § 1 exemption.[3] The Agreement's Delegation Clause requires the arbitrator, not the court, to decide in the

[3] In addition to her arguments as to section 229, Orr argued in the district court that, if the FAA does not apply to the Agreement, the entirety of the Agreement may be void under section 432.6 of the California Labor Code. That provision prohibits "requir[ing] any applicant for employment or any employee to waive any right, forum, or procedure for a violation of any provision of . . . [the California Labor Code], including the right to file and pursue a civil action or a complaint with, or otherwise notify, any state agency . . . or any court or other governmental entity of any alleged violation." Cal. Lab. Code § 432.6. Questions as to the enforceability of the Agreement under sections 229 and 432.6 are delegated to the arbitrator by the Delegation Clause. We therefore do not here determine the merits of Orr's California Labor Code arguments, nor may the district court do so.

first instance whether section 229 applies to Orr's claims "for the collection of due and unpaid wages." Cal. Lab. Code § 229. Because section 229 cannot apply if the FAA does, the arbitrator will have to decide whether the § 1 exemption applies if the district court does not. *New Prime* forbids that result. *New Prime*, 586 U.S. at 112.

2.

UPS nonetheless insists that, because there is an alternative state arbitration law under which arbitration may proceed, *New Prime* does not govern here. The district court in *New Prime*, UPS observes, was asked to compel arbitration only under the FAA. So, UPS contends, *New Prime* is inapplicable to Orr's case. But even in cases (like Orr's) where a state law scheme was assumed to be available as a backstop to compel arbitration, this court has required district courts to determine whether the § 1 exemption applies.

Consider *Romero*, 9 F.4th 1097. *Romero* involved class action claims brought by a delivery truck driver. The arbitration policy at issue in *Romero* contained a "Governing Law" provision specifying that, as here, the FAA controlled enforcement of the policy, but that "the laws of the State of Nevada" would apply "in the event a court of competent jurisdiction holds or decides" that the arbitration agreement is not subject to the FAA. *Id.* at 1099. Although Nevada state law would govern the agreement in the absence of the FAA, *Romero* affirmed the district court's decision to determine the "contours" of its authority and assess whether the § 1 exemption applies before compelling arbitration. *Id.* at 1100. And before *New Prime* was decided, *In re Van Dusen* concluded "the best reading of the law" required the district court to decide whether the FAA applies, even though the

Arizona Arbitration Act also provided a state-law basis for compelling arbitration. 654 F.3d at 840, 846.

UPS cites several district court cases to support its argument,[4] but it cites no instance in which a federal court of appeals has declined before compelling arbitration to select the legal basis for its authority to do so. Notably, no federal court of appeals that has addressed this set of circumstances has permitted district courts wholly to abstain from addressing the FAA § 1 exclusion question before compelling arbitration solely because an alternative state law might also provide for arbitration. *See, e.g.*, *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 27 n.13 (1st Cir. 2020) (observing that Washington law would apply as a "fallback" to interpret the dispute resolution section of an agreement only "if the FAA is inapplicable"); *Cunningham v. Lyft, Inc.*, 17 F.4th 244, 253 (1st Cir. 2021) ("Because we find that the FAA applies, we need not examine the role of the Massachusetts Uniform Arbitration Act."); *Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 296 (3d Cir. 2021) (establishing a three-part framework for challenges to arbitrability under § 1, requiring a district court first to address whether the § 1 exemption applies before considering the applicability of any alternative state law); *Adler v. Gruma Corp.*, 135 F.4th 55, 65–66 (3d Cir. 2025) (affirming *Harper*, deciding the § 1 issue, and declining to determine whether "courts must always start with the FAA, or whether they may 'jump' to independent state law to compel arbitration" ); *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 594–97 (4th Cir. 2023) (concluding that the FAA required arbitration and expressly declining to determine

[4] *See, e.g.*, *Robertson's Ready Mix, Ltd. v. Edwards*, No. 22-CV-1386, 2023 WL 3049228, at *7 (C.D. Cal. Mar. 2, 2023).

whether the Washington Uniform Arbitration Act would independently require arbitration of the plaintiff's claims); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1472 (D.C. Cir. 1997) (deciding the § 1 issue and compelling arbitration, notwithstanding the fact that the court had "little doubt" that the agreement would still be enforceable if the "case were deemed to be outside the scope of the FAA").[5]

In short, while the approaches of the various circuit courts to the issues before us vary to a degree, no federal court of appeals decision supports the district court's refusal to specify whether it compelled arbitration pursuant to federal or state law.[6] We follow the well-established consensus here.[7]

---

[5] Under the Third Circuit's three-step framework for deciding challenges to arbitrability under FAA § 1, district courts may address arbitrability under state law if the applicability of the FAA § 1 exclusion is "murky." *Harper*, 12 F.4th at 296. *Harper* does require district courts to address as a preliminary matter whether an agreement falls within the FAA § 1 exclusion, even if the court does not reach a final determination as to that issue. *See id.* To the extent the Third Circuit's framework differs from other circuits, we do not weigh in on that split. For present purposes, the salient point is that all circuits are in agreement with us that district courts may not compel arbitration without first identifying the legal basis for their authority to do so.

[6] Neither party argues that the FAA § 1 exclusion preempts state law favoring arbitration. We therefore assume without deciding that state arbitration law will govern if the FAA § 1 exemption applies.

[7] We do not hold that a district court must in all cases decide the § 1 exemption question before determining whether state law provides an alternative basis for compelling arbitration. There may be instances in which the parties agree, or in which the district court conclusively determines, that the consequences in arbitration would be identical whether the FAA or state law applies, and in which no contractual provision dictates that the § 1 issue be decided in advance of arbitration.

For these reasons, we conclude that the district court's decision to compel arbitration of Orr's individual claims was clearly erroneous.

3.

Orr raises additional clear error arguments in her petition. We briefly consider them here, as their resolution could affect the scope of any mandamus remedy.

a.

Orr contends that the district court committed clear legal error by "confirming the validity of the delegation clause," thereby determining that her challenges to the arbitrability of her claims "had to be settled by the arbitrator, but then seemingly making the arbitrability determination itself." Orr takes issue with the district court's holding in its order granting UPS's motion to compel arbitration that Orr forfeited her opportunity to challenge the Delegation Clause "and must arbitrate her individual claims."

"[G]ateway" issues of arbitrability, including whether the parties' agreement "covers a particular controversy," are delegated to the arbitrator by the Agreement's Delegation Clause. *Rent-A-Center*, 561 U.S. at 68–69. In its order denying Orr's motion for clarification, the district court stated that it "did not decide any issues as to the arbitrability of the agreement and specifically noted the delegation of such issues to the arbitrator." That ruling disposes of this issue. Read against that ruling, the district court's earlier statement in its order granting UPS's motion to compel arbitration meant that it compelled arbitration *of the*

The key point is that *New Prime* obligates the district court, not the arbitrator, to decide the § 1 question if it is to be decided.

*arbitrability* of Orr's individual claims, rather than concluding outright that Orr's individual claims were arbitrable. So the district court's ruling as to arbitrability, though imprecise, was not clearly erroneous.

b.

Orr also contends that the district court's refusal to evaluate the enforceability of the Class Action Waiver demonstrates the district court's clear error. Orr makes that point only to support her argument that the district court, not the arbitrator, must determine whether her agreement falls within a § 1 exemption. She does not otherwise seek mandamus relief with respect to the Class Action Waiver, so we do not address her clear error arguments as to the Class Action Waiver.

### B. Alternative Adequate Remedy

"A writ of mandamus is not available when the same review may be obtained through contemporaneous ordinary appeal." *In re Henson*, 869 F.3d 1052, 1058 (9th Cir. 2017) (citation modified). "Put another way, the first factor is typically satisfied when the district court order is neither final nor subject to interlocutory appeal." *In re Creech*, 119 F.4th 1114, 1124 (9th Cir. 2024) (citation modified).

Although the FAA authorizes a discretionary interlocutory appeal from an order granting a motion to compel arbitration, we concluded in *Henson* that the order compelling arbitration was "not a final decision that is subject to ordinary appeal under 28 U.S.C. § 1291," and we exercised our mandamus jurisdiction to review it. 869 F.3d at 1058. We follow *Henson* here. As no contemporaneous, ordinary appeal of the district court's order is available to

Orr, *see* 9 U.S.C. § 16(b)(1)–(2); Cal. Civ. Proc. Code § 1294, the first *Bauman* factor is met.

### C. Prejudice Not Correctable on Appeal

"The second [*Bauman*] factor is slightly different and often cabins the effect of the first factor. Even when contemporaneous appeal is unavailable, we hesitate to grant mandamus relief unless the petitioner will be damaged or prejudiced in any way not correctable on appeal." *In re Creech*, 119 F.4th at 1124 (citation modified). Under our cases, Orr satisfies the second *Bauman* factor for two cumulative reasons, both of which flow from the district court's flawed order granting UPS's motion to compel arbitration.

First, uncorrectable prejudice stems here from the district court's refusal to specify the source of authority for its order compelling arbitration. The limitations on compelling arbitration serve to "provid[e] the contours of judicial 'authority' or 'power.'" *Romero*, 9 F.4th at 1100. By improperly failing to decide whether the FAA or state law provides its authority to compel arbitration, the district court delegated that question to the arbitrator. That improper delegation both distorts the judiciary's role in determining the law applicable to the case and prejudices Orr, who should not be subject to arbitration premised on erroneous delegation of judicial authority. *See Sunshine Beauty Supplies, Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Ca.*, 872 F.2d 310, 311 (9th Cir. 1989) (granting writ of mandamus where the district court failed to consider a contractual forum-selection clause and explain its basis for transferring venue), *abrogated on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193 (2000); *see also Varsic v. U.S. Dist. Ct. for the Cent. Dist. of Ca.*, 607 F.2d

245, 252 (9th Cir. 1979) (concluding that hardship from a district court venue transfer that "Congress explicitly attempted to prevent" justified mandamus).

We should correct this error now. The district court's holding "may cause confusion" and "encourage similar erroneous approaches" to compelling arbitration. *In re Sussex*, 781 F.3d at 1076. Indeed, other district courts have already made the same error. *See, e.g.*, *Robertson's Ready Mix, Ltd. v. Edwards*, No. 22-CV-1386, 2023 WL 3049228, at *7 (C.D. Cal. Mar. 2, 2023) ("Nevertheless, the Court need not decide whether the FAA or the CAA governs the Arbitration Agreement because even under state law, the Court has discretion to compel arbitration.").

Second, because the outcome in arbitration could depend on whether the FAA or state arbitration law applies, Orr faces prejudice uncorrectable on appeal if she proceeds to arbitration without the district court's determination of that issue. As we described with respect to the *Bauman* clear error factor, whether the FAA applies to Orr's agreement—and so whether her claims will be assessed under federal or state law—will determine which claims Orr must arbitrate and which she must litigate in court. *See supra* pp. 14–16. Orr did not, and could not, agree to submit the FAA § 1 determination to the arbitrator. *See New Prime*, 586 U.S. at 112. Pending the result of that inquiry by the arbitrator, Orr may be deprived of the ability to litigate several of her claims in a federal forum in the first instance if the arbitrator determines her Agreement does not fall within the exemption. Also, whether Orr will as a practical matter be able to pursue her class action claims in court, and so whether she can challenge the Agreement's Class Action Waiver, will turn on whether the FAA § 1 exclusion applies. *Compare Gentry v. Sup. Ct.*, 42 Cal. 4th 443, 463 (2007)

(describing four factors under which courts determine whether class action waivers are unenforceable under California law) *with Iskanian v. CLS Transp. L.A. LLC*, 59 Cal. 4th 348, 366 (2014) (holding that, under *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011), the FAA preempts the *Gentry* rule).

We conclude that Orr satisfies the second *Bauman* factor.

**D. Oft-Repeated Error**

Where there is a "lack of precedent," an alleged error is likely not "oft-repeated." *In re Swift Transp. Co.*, 830 F.3d 913, 917 (9th Cir. 2016). Orr contends that the district court's error is oft-repeated because the court twice insisted that it did not need to evaluate the § 1 exemption, first in its order compelling arbitration and again in its order denying Orr's motion for clarification. We do not agree that the errors in this very case count for purposes of this mandamus factor. We note, however, that at least two district courts in this circuit have taken the erroneous approach at issue here, both before and after *New Prime*. *See Robertson's Ready Mix*, 2023 WL 3049228, at *7; *Pizzorno v. Draper*, No. 17-CV-00182, 2017 WL 4712071, at *7 n.5 (C.D. Cal. July 7, 2017) ("The Court need not decide whether the NDP agreement is subject to the FAA or CAA because the result under each is the same."). We need not decide whether two cases constitute an "oft-repeated" error under *Bauman*. Given our conclusions as to the other *Bauman* factors, the fourth factor does not matter for the result here. *See In re Henson*, 869 F.3d at 1062; *see also In re Kirkland*, 75 F.4th 1030, 1051 (9th Cir. 2023) (declining to "analyze the fourth factor in depth" where other *Bauman* factors weighed in favor of mandamus relief).

### E. Issue of First Impression

The fifth *Bauman* factor asks whether "[t]he district court's order raises new and important problems, or issues of law of first impression." *Bauman*, 557 F.2d at 655. Orr did not address the fifth *Bauman* factor in either her mandamus petition or in her reply brief. And even if she had, *In re Van Dusen* held that the question "whether the district court must itself determine the applicability of a Section 1 exemption, or whether the exemption question is a 'question of arbitrability' that contracting parties may validly delegate to an arbitrator" was an issue of first impression at that time. 654 F.3d at 843. That is essentially the same question at issue here, so the fifth *Bauman* factor is not met.

## III. Conclusion

Orr has made a sufficient showing as to the first three *Bauman* factors, including the critical factor of clear legal error. As "the first three *Bauman* factors strongly favor mandamus relief," *In re Henson*, 869 F.3d at 1062, mandamus relief is appropriate. We therefore grant Orr's petition for a writ of mandamus. We direct the district court to determine the appropriate statutory basis for its authority to compel arbitration.

There are various federal and state issues debated by the parties in the district court that we do not address but that could preclude arbitration of some or all of Orr's claims. Our mandamus order is not meant to indicate that arbitration *must* be ordered, but that the basis for the arbitration must be

decided first,[8] with other arbitrability issues committed to the district court to follow.

**WRIT GRANTED.**

---

MILLER, Circuit Judge, concurring:

I join the court's opinion in full because it correctly applies our precedents permitting the use of writs of mandamus to review orders compelling arbitration. *See*, *e.g.*, *In re Henson*, 869 F.3d 1052, 1062 (9th Cir. 2017) (per curiam); *Douglas v. United States Dist. Ct. for the Cent. Dist. of Cal.*, 495 F.3d 1062, 1069 (9th Cir. 2007) (per curiam). I write separately to express my view that those cases improperly disregarded Congress's specific limitations on interlocutory review of orders involving arbitration.

In 9 U.S.C. § 16, Congress authorized immediate appeal from orders refusing to stay litigation pending arbitration and from orders refusing to direct arbitration to proceed. *Id.* § 16(a). At the same time, it provided that "[e]xcept as otherwise provided in section 1292(b) of title 28, an appeal may *not* be taken from an interlocutory order" staying litigation pending arbitration or directing arbitration to proceed. 9 U.S.C. § 16(b) (emphasis added).

By enacting section 16, Congress "carefully designed a framework for appeals in the arbitration context" to "'promote appeals from orders barring arbitration and limit appeals from orders directing arbitration.'" *Langere v.*

[8] Although we do not reach the merits of the § 1 question here, we note a recently decided Supreme Court case that addresses the § 1 issue as it pertains to employees who deliver packages to their final destination. *See Flowers Foods, Inc. v. Brock*, 608 U.S. ___ (2026).

*Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1118 (9th Cir. 2020) (quoting *Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1153 (9th Cir. 2004)). We have recognized section 16 as "the sole route for immediate appeal of an order staying proceedings and compelling arbitration." *Johnson v. Consumerinfo.com, Inc.*, 745 F.3d 1019, 1023 (9th Cir. 2014).

A writ of mandamus "is not to be used to circumvent the statutory limitations on interlocutory appeals." *McKersie v. IU Int'l Corp.*, 830 F.2d 88, 89 (7th Cir. 1987) (per curiam); *see also Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) ("[Mandamus] may not appropriately be used merely as a substitute for the appeal procedure prescribed by the statute."). In this context, therefore, the burden of showing an entitlement to mandamus should be "particularly heavy, because Congress has expressly limited interlocutory review of a district court decision on arbitration." *McDermott Int'l, Inc. v. Underwriters at Lloyds*, 981 F.2d 744, 748 (5th Cir. 1993).

*Douglas* and *Henson* bypass section 16 entirely by allowing plaintiffs to use mandamus as a vehicle for immediate appellate review of interlocutory orders compelling arbitration. In so doing, they have "nullified" the statutory "scheme for discretionary appellate review of arbitration orders," *Langere*, 983 F.3d at 1122, and misused mandamus, "a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes,'" as a substitute for statutory appeal, *Van Dusen v. United States Dist. Ct. for the Dist. of Ariz.*, 654 F.3d 838, 840 (9th Cir. 2011) (quoting *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947)). In an appropriate case, we should reconsider those decisions.